## J. M. Hunt, et al. v. Pikeville National Bank.

## Pikeville National Bank v. W. N. Hunt, et al.

(Decided February 8, 1927.)

### Appeals from Pike Circuit Court.

1.  Fraudulent Conveyances—Evidence Held to Show Deeds of Land, Minerals, and Timber Fraudulent as to Grantor's Creditor.—Evidence held to show that deeds of land, minerals, and standing timber were fraudulent as to bank suing on grantor's notes.

2.  Appeal and Error—In Absence of Brief Specifying Reversible Errors on Appeal Brought up by Appellee Filing Copy of Record, Judgment will be Presumed Correct (Civil Code of Practice, Section 741).—Where appellant files no brief, specifying errors for which reversal is asked, on appeal brought before Court of Appeals by appellee's filing of authenticated copy of record, under Civil Code of Practice, section 741, it will be presumed that none exist and that judgment is corrct.

J. J. MOORE for Pikeville National Bank.

WILLIS STATON for W. N. Hunt, Sarah Hunt, and J. M. Hunt.

ROSCOE VANOVER for Sarah Jones.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing in part and affirming in part.

The two above styled appeals grow out of the same cause of action and will be disposed of by one opinion. The action out of which they arise was instituted by the Pikeville National Bank as plaintiff below, and, as it is appellant in one of the appeals and appellee in the other, for convenience it will be referred to hereinafter as the bank.

We will first dispose of the appeal styled J. M. Hunt, et al. v. Pikeville National Bank. The bank instituted the action to recover from J. M. Whitt and William F. Slone approximately $13,000.00 owing by them to it as evidenced by certain promissory notes. It also attacked as fraudulent two deeds of conveyance made by J. M. Whitt to appellant, J. M. Hunt. A general order of attachment which issued was levied upon the land, deeds conveying which were sought to be cancelled. Issue was joined by appellant, Hunt, and upon the trial below it was adjudged that the deeds from Whitt to him were fraudulent and they were cancelled. Hunt appeals from that judgment.

He insists that he was a good faith purchaser for a valuable consideration without notice, and that the judgment of the chancellor is erroneous in so far as it held fraudulent and cancelled the deed from Whitt to him. The evidence found herein establishes that J. M. Whitt and William F. Slone, who were indebted to the bank to the amount of approximately $13,000.00, evidenced by promissory notes, unquestionably undertook to cheat, hinder and delay it in the collection of its debts by conveying and delivering to others all of their property. Brief filed for appellant, J. M. Hunt, concedes that the record establishes those facts. It appears that J. M. Hunt is the brother-in-law of J. M. Whitt. By deed dated April 10, 1925, Whitt conveyed to Hunt, for the recited consideration of $6,000.00 cash, all of the minerals in and under a tract of land in Pike county, Kentucky, containing approximately 200 acres. By deed dated April 11, 1925, Whitt conveyed to Hunt all the standing timber then on three tracts of land in Pike county, Kentucky, for a recited consideration of $1,449.00 cash. On the latter date Hunt also claims to have purchased from Whitt for $1,000.00 cash a lot of mules and cattle and logging equipment. The personal property claimed to have been so purchased was immediately driven from Kentucky into Virginia and disposed of. Hunt, to whom this real and personal estate was sold and conveyed, lived near Freeburn, Kentucky, and appears to have carried a bank account with the Merchants' and Miners' Bank, of Freeburn, Kentucky, for several years before it is claimed these transactions took place. Accounting for the funds with which he purchased these properties, Hunt claimed to have accumulated by sales of different kinds of property throughout the previous four or five years $7,000.00 in cash which he had never deposited in any bank but which he had kept in a safe and to have used this cash as far as it went in purchasing the real estate and personal property which Whitt sold him. He testified that he deposited $3,000.00 in the First National Bank of Williamson, West Virginia, and $3,000.00 in the Matewan National Bank of Matewan, West Virginia, and to have given Whitt a check on each of these banks for $3,000.00 for the tract of mineral land purchased by him. He does not appear, either previously or subsequently, to have had an account with either of those banks. No reasonable explanation is given as to why the money with which he paid for the mineral land was not deposited in

the bank near his home with which he was accustomed to do business, nor is there any reasonable explanation as to why if he had the $6,000.00 in cash all of it was not deposited in the first bank, or why he thought it best to deposit only $3,000.00 in the first bank and check it out and on the same day make another deposit for $3,000.00 in another bank at another town some twenty or twenty-five miles away. According to the testimony of both Whitt and Hunt they went to these banks together. Hunt made the deposit of $3,000.00 in each of them, and immediately issued to Whitt a check for the full amount, which the latter immediately presented and cashed. It was established by the bank officials with whom these transactions were had that they remarked that they were making a deal and wanted record evidence of it. The first of these transactions occurred with the First National Bank of Williamson, West Virginia, and on Saturday so late in the day that that day's business had been closed and the transactions were entered on the bank's records as having occurred the following Monday. They then proceeded to the First National Bank of Matewan; and the testimony of the officials of that bank discloses that the $3,000.00 in currency which Whitt produced there and deposited was in bundles encircled with wrappers of the First National Bank of Williamson, West Virginia. This fact alone is sufficient to establish conclusively that the same money Whitt drew on Hunt's check in the First National Bank of Williamson was delivered again by Whitt to Hunt before they reached the Matewan bank and was there again deposited by Hunt and checked against for the payment of the second $3,000.00 of the $6,000.00, recited cash consideration for the mineral land. Whitt and Hunt denied that the money deposited by the former in the Matewan bank was encircled with First National Bank of Williamson wrappers. No reason suggests itself why the bank officials of the Matewan bank, with whom Hunt and Whitt had this transaction, should have deviated from the truth in their testimony herein. The interest of the other parties concerned, however, is apparent. These facts would seem to speak for themselves, and nothing that might be said could add anything to the effect that must be given to them. The record discloses a palpable effort upon the part of J. M. Whitt to prevent the bank from collecting the debts owing by him to it, and that appellant, J. M.

Hunt, lent his aid to the scheme by taking the deeds of conveyance for the minerals and timber with full knowledge of what Whitt was attempting to do. The chancellor clearly was right in concluding that the two deeds in question were fraudulent and should be cancelled, and the judgment to that effect on the appeal by J. M. Hunt is affirmed.

By deed dated April 10, 1925, J. M. Whitt conveyed to W. N. and Sarah Hunt 200 acres of land in Pike county, Kentucky, for the recited consideration of $1,800.00 cash. That deed was not lodged for record until the 8th day of May, 1925. It was made at a time when J. M. Whitt, the grantor, was indebted to the bank on notes to the amount of approximately $13,000.00, and when it was pressing Whitt for payment under penalty of an action to collect. It was made the same day that Whitt, the grantor, conveyed the minerals in and under another 200 acre tract to J. M. Hunt, discussed in the preceding portion of this opinion. J. M. Hunt is the brother-in-law of J. M. Whitt. W. N. Hunt, to whom the deed now under consideration was made, is a brother of J. M. Hunt. By this action the bank sought to cancel this deed to W. N. and Sarah E. Hunt as fraudulent. Upon the trial below the chancellor dismissed the bank's petition in so far as it sought that relief. This appeal by the bank questions the correctness of that judgment and seeks to reverse it.

Sarah E. Hunt is the wife of W. N. Hunt. She, however, does not appear to have taken any part in the negotiations leading to this land deal and she did not testify herein. W. N. Hunt testified that he made the deal for this tract of land at the same time and place that his brother, J. M. Hunt, made the deal for the mineral land, and was not positive but that his brother and Whitt at the same time made the deals for the timber land and for the live stock and logging equipment. He testified that when he purchased the tract of land for which he paid $1,800.00 he did not know and could not estimate how many acres it contained, and that he had not seen the tract of land for ten or fifteen years and had never been on only a small portion of it. He testified that he paid for the land by check on the Merchants' & Miners' Bank of Freeburn for $1,800.00, and that the day the transaction occurred there was transferred to his account with that bank from that of his wife $1,800.00 with which to meet the check he gave. Though requested to do so he did not produce and file in

evidence the $1,800.00 check which he stated he gave to Whitt. Though requested to do so and though he agreed he did not file with his deposition a statement showing the different items of deposit credited to his account and to the account of his wife with that bank for the month preceding and that succeeding the 10th of April, 1925, and showing the checks charged to his account and that of his wife during that period of time. The only bank statement filed by him was one showing his own deposits during that period of time. It shows that on April 10, 1925, the date of the transaction, there was transferred to his account from that of his wife $3,079.70. He had testified that there was only $1,800.00 so transferred.

The record then discloses these facts: W. N. Hunt is the brother of J. M. Hunt. The latter is the brother-in-law of J. M. Whitt. W. N. Hunt was present and heard the negotiations leading to the conveyance by Whitt to J. M. Hunt of the mineral and timber lands and the sale by Whitt to Hunt of his mules and cattle and logging equipment, all of which as hereinbefore concluded were palpably fraudulent conveyances, entered into by Whitt and J. M. Hunt to defeat the bank in the collection of its debts against the former. W. N. Hunt claims to have purchased the tract of land without any idea as to the number of acres contained in it and without having seen it for ten or fifteen years and without ever having seen but a small portion of it. He failed to produce and file the bank statements and checks which he was requested to do. No reason appears why if he was paying only $1,800.00 for the tract of land there should have been transferred from his wife's account to his own more than $3,000.00 to meet the $1,800.00 check he claims to have given. It is extremely difficult under these facts for the court to conclude that the conveyance by Whitt to appellee, W. N. Hunt, was a good faith transaction. It is altogether probable, in view of the facts shown, that the $3,000.00 transferred from the account of Mrs. Hunt to that of W. N. Hunt on April 10, 1925, when, according to his testimony, he needed only $1,800.00 to pay for his purchase, accounts for the $3,000.00 deposited on the same day by J. M. Hunt in the First National Bank of Williamson, West Virginia, which he immediately checked out to J. M. Whitt, and which was later on the same day deposited by J. M. Hunt in the First National Bank of Matewan, West Virginia, and immediately

checked out to J. M. Whitt. The parties to these transactions are too closely associated together, and the transactions are too intimately interwoven with each other, and the facts and circumstances surrounding them are too unusual and too out of line with usual and customary business dealings, to leave this court with the conclusion that the conveyance of the 200 acre tract of land by J. M. Whitt to appellee, W. N. Hunt, was a good faith transaction. We, therefore, conclude that the chancellor erroneously dismissed the bank's petition in so far as it sought to have the deed from J. M. Whitt to W. N. Hunt cancelled as fraudulent, and the judgment to that extent will be reversed.

By the judgment appealed from certain deeds executed and delivered by Wm. F. Slone to his mother-in-law, Sarah Jones, were adjudged fraudulent and cancelled. They excepted and prayed and were granted an appeal. An authenticated copy of the record was filed in the clerk's office of this court by appellee bank under the provisions of section 741, Civil Code of Practice, thus bringing that appeal before this court. No brief for them has been filed. Where no brief is filed specifying the errors for which a reversal is asked it will be presumed that none exist and that the judgment is correct. Guardian Life Ins. Co. v. Zimlich, 198 Ky. 616, 250 S. W. 139; Spradlin v. Spradlin, 170 Ky. 297, 185 S. W. 838; Commonwealth v. L. & E. Ry. Company, 167 Ky. 442, 180 S. W. 532; Continental Ins. Company v. Ramsey, 160 Ky. 441, 169 S. W. 855. Hence, the judgment cancelling the deeds to Sarah Jones will be affirmed.

The judgment dismissing the bank's petition in so far as it sought to have declared fraudulent and cancellation of the deed from J. M. Whitt to W. N. Hunt and Sarah E. Hunt, dated April 10, 1925, is reversed, with direction to enter a judgment in conformity herewith, but as to all other matters concluded by it the judgment is affirmed.